Genaro Cautiño Insúa, peticionario y apelado, Ex Parte. Sucesión de Doña Isabel Llera Vda. de Rucabado, Graciela Pérez Torres de Meléndez, Angel Luis Pérez representado por su madre Julia Nazario, Concepción Pérez Vázquez y Marta Virgen Pérez Alicea, opositores y apelantes.

Núm. 7176.—*Sometido:* Abril 8, 1937. *Resuelto:* Mayo 4, 1937.

P. *Amado Rivera,* M. *Rodríguez Alberty,* F. *Beiró Rovira, Pedro E. Anglade* y C. *Domínguez Rubio,* abogados de los apelantes; *Tomás Bernardini de la Huerta,* abogado del administrador judicial; *Tomás Bernardini Palés,* abogado de Julia, conocida por Julí, Luis Adalberto y María Virginia Pérez Vázquez, representados por su madre Rosa Vázquez Vega; Mericia Pérez Vega, representada por su madre Viviana y Felisa Pérez Vázquez; y *Miguel Marcos Morales,* abogado del Crédito y Ahorro Ponceño.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

José Pérez Llera falleció en el pueblo de Cayey el día 5 de mayo de 1932, siendo soltero. Le sobrevivieron su madre, doña Isabel Llera, y sus descendientes Graciela, Concepción, Luisa, conocida por Josefa, Horacio, Julia, Luis Adalberto, María Virginia, Mericia y Marta Virgen, declarados sus hijos naturales reconocidos por la Corte de Distrito de Guayama.

Entre otros documentos del finado apareció, después de

su muerte, una carta dirigida a Genaro Cautiño Insúa, que transcrita literalmente dice así:

"Cayey 4 Mayo, 1930.—Sr. D. Genaro Cautiño, Guayama.—Mi más querido compadre: Quisiera estar tranquilo y poderle explicar todo cuanto me pasa pero debido a mis nervios no puedo hacerlo.— Siendo V. el único ser en quien tengo todas mis esperanzas y mi confianza quiero antes de morir dejarle encargado a mis hijos y todos mis bienes para que V. busque la manera de dejarlos amparados que no se haga nada sin su consentimiento pues conozco bien su buen corazón y sé seguro V. no hará nada que no sea mi voluntad.—Para la venta de los tabacos hablé con D. Antonio Long y D. Félix Arostegui que estoy seguro ambos le ayudarán y se saldrá lo mejor posible lo que sobre con casas, fincas, ganado y demás repártaselos a mis hijos pero no entregándoselos a ellos sino proporcionándoles una renta para que vivan y nunca puedan derrocharlo. Además de eso el dinero que en su poder tengo quiero me lo reparta en la forma siguiente son poco más o menos $70,000.—Para Luisa $25,000, para Yuli $15,000. Para Adalberto $10,000, para María Virginia $10,000, y para Mericia $10,000. Esto es además de lo que yo tengo o pueda tener. Adalberto le entregará todos los libros si los tabacos se venden de $20 para abajo creo no se necesiten—$4,000 p. la liquidación de los rafaccionados.—Cualquier duda que tenga consúltele a Anito pero jamás confíe en él pues no tiene gratitud a pesar de todo quiero después que todo se liquide quiero dejarle cuatro o quinientos dollars no por él sino por sus hijos para que compren una casita.—A estos individuos que le nombro quiero me les dé $500 a cada uno y son los siguientes: Julián Ramos, Josefina Nieves esta muchacha es de Toa Alta, Luis Brau, Sandiego Torres, Fruto López, Pepe Delvalle. Elisa Malavé además de los $500 a esta última me le traspasa a nombre de ella un terreno que el padre me tiene hipotecado y a Dña. César la señora de don Tano me le da $100.—A V. le extrañará la determinación que he tomado pero me es imposible seguir viviendo en una vida donde no se ve mas que la desvergüenza y el pillage a cada momento me acuerdo de V. y le compadezco por verse obligado a seguir luchando con tanto bandido. A su comadre y a Bibina mientras procedan con vergüenza ayúdelas de lo que hay.—Si a mi se me ha olvidado alguna cosa la dejo a su criterio pues donde quiera que me encuentre daré por bien todo lo que V. haga.—Reciba el abrazo más sincero de su compadre que jamás lo olvidará.—Firmado: Pepe. P. D. Enrique Mendoza me tiene hipotecado un solar pásele la escritura de dicho solar a mi ahijada que es hija de él que yo se

lo regalo.—Dado caso que tenga inconveniente en la venta de los tabacos hable con Don Félix para que le explique bien el principio de las cosas todo me ha pasado devido al estado de nervios en que me puso Mr. Gans desde su principio.—Procure V. ir con D. Félix hablar con Mr. Malla si viene a Puerto Rico.—Vale.''

Estimando el destinatario de dicha carta que se trataba del testamento ológrafo del causante, promovió en la Corte de Distrito de Guayama el expediente núm. 9832, sobre protocolización del testamento ológrafo de José Pérez Llera, en el que recayó resolución el día 20 de mayo de 1932 declarando comprobada su identidad, y ordenando su protocolización en la notaría del abogado don Tomás Bernardini de la Huerta.

Por escritura pública de 31 de mayo de 1932 Genaro Cautiño Insúa aceptó el cargo de albacea testamentario, y por resolución de 2 de junio del mismo año, la Corte de Distrito de Guayama ordenó que se le expidieran las correspondientes cartas testamentarias.

En 25 de octubre de 1932 Cautiño, en su carácter de albacea, con intervención de la corte, practicó un inventario de los bienes relictos, que arrojó un activo de $317,777.03 y un pasivo de $139,441.30.

La moción que ha sido origen del presente recurso es una sobre nombramiento de contador-partidor, radicada en la Corte de Distrito de Guayama el día 4 de septiembre de 1934 por Graciela Pérez Torres de Meléndez, Angel Luis Pérez, representado por su madre Julia Nazario, Concepción Pérez Vázquez, Marta Virgen Pérez Alicea y Sucn. de Isabel Llera Vda. de Rucabado. En dicha moción se alega la muerte de José Pérez Llera y se transcribe literalmente la carta dirigida a Genaro Cautiño Insúa, supra; se hacen ciertas observaciones cuyo propósito parece ser el de impugnar dicha carta como el testamento ológrafo del causante, a saber: primero, que firmó ''Pepe'' y no su nombre completo; segundo, que pretirió el causante a su señora madre, doña Isabel Llera Vda. de Rucabado; tercero, que no men-

ciona los nombres de sus hijos y que los priva de su herencia en pleno dominio, y cuarto, que no establece el nombramiento de albacea ni de contador-partidor; que a pesar de esta última objeción, Genaro Cautiño aceptó el cargo de albacea, se hizo expedir cartas testamentarias, y procedió a la práctica de un inventario, con intervención de la corte, pero sin que fueran citados ni los hijos del causante ni sus respectivas madres; que el 25 de octubre de 1932 se radicó el inventario, que arroja un balance neto de $178,335.73 y en el que existe un capítulo de acreedores, que se relacionan, y un crédito vencido de la sociedad José González & Co., S. en C., (de la cual es socio gestor Genaro Cautiño Insúa) a favor de José Pérez Llera ascendente a $60,000, que con intereses vencidos sube a $70,000, cuando la cantidad que según el testamento tenía Genaro Cautiño de José Pérez Llera ascendía a $70,000, y no habla de intereses; que Horacio Pérez Vázquez, uno de los hijos así reconocidos, falleció, compareciendo a su nombre su heredero Angel Luis Pérez, que es su hijo; que entre las deudas del finado figura una pignoraticia con el Crédito y Ahorro Ponceño que ascendía en agosto de 1932 a $140,349 y en 31 de julio, 1934, a $68,130.58; que a la fecha de la solicitud estaba pendiente de resolución por la corte de distrito una reclamación de El Pueblo de Puerto Rico por contribuciones adeudadas hasta julio 29, 1933, ascendente a $10,633.46, solicitando que se ordenara el pago o concediera permiso para embargar; que según el inventario producido, las contribuciones adeudadas a la fecha en que se radicó, ascendían a $4,216.67, por lo que existe una diferencia de $6,000 contra el caudal; que no han sido provistas las mociones de Concepción Pérez Vázquez, María Encarnación Vázquez y Graciela Pérez Meléndez, hijas naturales reconocidas del causante, solicitando pensiones alimenticias, por lo que nada reciben del administrador, mientras que "Rosa Vázquez Vega, a nombre de sus hijos menores Julia, Adalberto y María Virginia, solicitó un aumento de pensión de $50 a $60 mensuales", y le fué concedido por

orden de 28 de agosto de 1933; que la referida moción solicitando aumento de pensión "fué notificada tan sólo al abogado del administrador Sr. Bernardini de la Huerta, y tiene todas las características de haber sido dictada por aquél"; que a Bibina y Luisa Vega se le han hecho también pagos sin orden de la corte; que las personas que reciben esos pagos son insolventes y sus derechos en la herencia aún no han sido determinados; que la cantidad de $80,000, más o menos, que adeuda la sociedad José González y Co., S. en C., no ha sido pagada al fondo de la administración no obstante estar vencida; y que de haberse pagado hubiera sido posible saldar lo adeudado al Crédito y Ahorro Ponceño, ascendente en julio 31, 1934, a $68,130.58; que en la hipótesis de que los $70,000 de que habla el testador hubiese que repartirlos como él dispuso en el testamento, la diferencia de $7,788.65 (sic) pudo y debió haberse pagado por la sociedad mencionada para aplicarlo al pago de las contribuciones que devengan intereses al tipo del 12 por ciento anual; que el 3 de abril, 1934, Concepción Pérez Vázquez radicó una petición sobre nombramiento de contador-partidor que fué declarada sin lugar, según ya se ha dicho, y que fué impugnada por el administrador a través de su abogado don Tomás Bernardini de la Huerta y por el abogado Tomás Bernardini Palés, en representación de los herederos Luisa, Yulí, Luis Adalberto, María Virginia y Mericia Pérez, hijos naturales reconocidos del finado, que son los que reciben $60.00 mensuales.

Se alega también expresamente que tardará mucho la administración en pagar las deudas debido a que los bienes no producen rentas; que sólo un número de acreedores, que se relacionan, han cobrado sus acreencias; que la dilación de la partición de bienes ha traído como consecuencia la radicación de varios pleitos que aparejan gastos a la administración; que el hecho de que el finado manifestara que los $70,000 que existían en poder del Sr. Cautiño fuesen repartidos en la forma dispuesta en el testamento, no es óbice al

nombramiento de un contador-partidor, pues los derechos de los acreedores son preferentes a los de los herederos. Por último, se ilustra por medio de ejemplos una alegación hipotética al efecto de que ora se considere "el fallecimiento del Sr. Pérez Llera bajo testamento o en lo que atañe a su señora madre como si hubiese fallecido ab intestato, aceptaremos únicamente a los efectos de esta solicitud, que el artículo 768 del Código Civil vigente es aplicable a la distribución de la herencia del mismo."

Termina la solicitud con súplica de que se nombre un contador-partidor en vista de los hechos expuestos, del artículo 67 de la Ley de Procedimientos Legales Especiales y del caso de *Labarthe et al.* v. *Newman,* 23 D.P.R. 689, 692.

Se opuso el administrador a tal nombramiento basándose:

*Primero:* En que la herencia se encuentra en un proceso de administración, "estando en la actualidad el administrador cumpliendo órdenes sobre ventas de bienes para pago a los acreedores, y en arreglos de proceder a satisfacer las deudas que, según el inventario, aparecen contra el caudal."

*Segundo:* En que el nombramiento de un contador-partidor equivaldría a partir la herencia sin satisfacer antes a los acreedores a quienes reserva la ley el derecho a oponerse hasta tanto no se les pague o afiance el importe de sus créditos, residiendo la facultad de solicitar tal nombramiento exclusivamente en la persona del administrador judicial. Distingue el caso de *Labarthe* v. *Newman,* 23 D.P.R. 692.

*Tercero:* En que el testador le confirió amplia facultad en el testamento para dividir la herencia invistiéndole así con el carácter de contador-partidor.

Se celebró una vista. El 20 de marzo de 1935 dictó la corte resolución declarando sin lugar la petición sobre nombramiento de partidor-contador, y los perjudicados por esa resolución han apelado. Señalan como único error de la corte inferior el "no declarar con lugar la moción sobre nombramiento de contador-partidor, haciendo descansar su

resolución, no en hechos probados y demostrativos de que no procedía en ley o en disposiciones legales tal nombramiento, sino en conjeturas, apreciaciones sin hechos que la sostengan, y en una errónea apreciación de ciertas palabras del testador.''

Sería prolijo resumir la prueba documental y testifical presentada. La transcripción de la evidencia solamente, consta de 399 páginas. A pesar de lo voluminoso del récord, ni los abogados de los apelantes ni el del apelado han comparecido a la vista del recurso ante esta corte. El último no radicó alegato y el de los primeros es muy deficiente.

Un estudio muy cuidadoso de toda la evidencia aportada nos ha convencido de que la resolución de la corte de distrito es errónea. Quizás su marcado deseo de respetar en lo posible la voluntad del finado en cuanto a la distribución de los $70,000 en poder de la sociedad Sucesores de José González & Cía., S. en C., le indujo a error. En parte, dice así dicha opinión:·

''En nuestra resolución de fecha 23 de noviembre de 1933, dijimos lo siguiente:

'' 'Es de conocimiento general que, debido a la depresión mundial en el campo de los negocios, el valor de la propiedad tanto mueble como inmueble, ha desmerecido grandemente y de ahí que actualmente sea muy difícil el obtener en venta un precio justo y equitativo por los bienes que se desean realizar. Y siendo así, se hace muy difícil y casi imposible el asegurar que, vendidos en un momento dado los bienes de la herencia, éstos pudieran producir una cantidad suficiente para cubrir debidamente las deudas de la herencia, así como los gastos de la administración.'

''La situación en este respecto no ha variado grandemente en la actualidad . . . .

''. . . . . . . . .

''Se insiste grandemente por los peticionarios en su moción en el crédito que adeuda a la administración la sociedad Sucesores de José González & Cía., S. en C., alegándose que dichas sumas deben ser pagadas y traídas a la administración. Pero si examinamos el testamento del causante, veremos que en el mismo se hace constar que:

'' ' . . . . el dinero que en su poder tengo quiero me lo reparta en la forma siguiente son poco más o menos $70,000.—Para Luisa

$25,000, para Yulí $15,000, para Adalberto $10,000, para María Virginia $10,000 y para Mericia $10,000, esto es además de lo que yo tenga o pueda tener . . . .'

"Disposición testamentaria que, a nuestro entender, debe ser cumplida, y para el pago de las deudas y atenciones de la administración debe recurrirse primeramente a la venta de los demás bienes de la herencia y únicamente en el caso de que éstos fueran insuficientes para el pago de las mismas, disponer entonces de las cantidades que existen en poder de la Sociedad Sucrs. de José González & Cía., S. en C., ya que éstas han sido designadas por el testador para un fin determinado, como es, el pago a los herederos que en dicha disposición se especifican."

█ Ha dicho Manresa que preferente es el derecho de los acreedores al de los herederos, y que primero es pagar que heredar. Entre las deudas importantes contra el caudal hereditario existe la del Crédito y Ahorro Ponceño, la cual ascendía en 31 de julio de 1934 a $68,130.58. Hasta tanto no se satisfaga el total de ésa y otras deudas a que no hemos hecho mención, los herederos no tienen ningún derecho preferente a parte alguna de la herencia. Tienen, sin embargo, derecho a dividirla, según lo disponen los artículos 1005 y 1006 de nuestro Código Civil siempre que queden salvaguardados, mediante pago o afianzamiento, los derechos de los acreedores en la forma prevista por el artículo 1035 del mismo código.

█ Deseando varios de los herederos separarse de la comunidad, y existiendo, de acuerdo con el inventario sometido por el albacea y administrador, un crédito ascendente el 25 de octubre de 1932 a $70,706.65 contra Sucesores de José González & Cía., S. en C., ¿está justificado aguardar mejores tiempos para realizar a mayor precio otras propiedades, cuando no es necesario aguardar y menos aún sacrificarlas ahora? La misma corte inferior abriga grandes dudas de que "vendidos en un momento dado los bienes de la herencia éstos pudieran producir una cantidad suficiente para cubrir debidamente las deudas de la herencia, así como los gastos

de la administración." Esto lo dijo en noviembre de 1933; en marzo de 1935 se vió forzada a repetirlo. Y sería entrar en el terreno de las especulaciones el tratar de predecir si dentro de algunos años por venir ha de verse precisada a hacer igual o parecida afirmación.

Mientras tanto, so color de respetar una disposición testamentaria que dentro de las circunstancias de este caso no es necesario respetar porque hay acreedores con créditos vencidos y sin cobrar, varios de los herederos son obligados a permanecer, contra su expresa voluntad, en un estado de indivisión, a que, según hemos visto, no están obligados por la ley. Existe otra circunstancia. Mientras varios de los hijos naturales reconocidos están recibiendo anticipos mensuales, otros con iguales derechos no reciben nada a pesar de haberlo solicitado.

Los fundamentos de oposición aducidos por el administrador contra la presente solicitud, no pueden, a nuestro juicio, considerarse suficientes a impedir el nombramiento de un contador-partidor. Refiriéndonos al primero, en sus manos está exigir el pago a Sucrs. de José González & Cía., S. en C., de la suma que adeuda al caudal; es un crédito vencido y realizable, que bastaría para atender al pago de la deuda al Crédito y Ahorro Ponceño. Y mientras eso es así, nos dice en su moción de oposición que es improcedente el nombramiento de un contador porque está "en la actualidad el administrador cumpliendo órdenes *sobre venta de bienes* para pago a los acreedores, y en arreglos de proceder a satisfacer las deudas que según el inventario, aparecen contra el caudal. Es decir, el administrador está haciendo aquello que la corte y él mismo creen improcedente y perjudicial a los intereses de los herederos.

Si la venta de esos bienes se está efectuando a los precios ridículos que según el testimonio del Sr. Cautiño prevalecen hoy, entonces escasamente cubriría el importe de esos bienes las deudas contra el caudal. Sería, pues, necesario recurrir a lo adeudado por Sucrs. de José González & Cía., S. en C.,

para satisfacer la legítima de la madre del causante y de todos sus hijos. No podría cumplirse la voluntad del finado.

En cuanto al segundo fundamento, dispone el artículo 67 de la Ley de Procedimientos Legales Especiales que "cuando el albacea o administrador . . . . hubiese satisfecho *o tuviese en su poder bienes bastantes para satisfacer las deudas y gastos de la administración,* deberá pedir . . . . el nombramiento de un contador-partidor . . . ." De donde se desprende claramente que si el administrador tuviere en su poder bienes bastantes para pagar, como en este caso, pueden los herederos solicitar el nombramiento de un contador-partidor (*Labarthe* v. *Newman,* 23 D.P.R. 689, 692, perfectamente aplicable) aun cuando estén pendientes de pago todas las deudas contra el caudal. Ello no equivaldría, como sostiene el administrador, a partir la herencia sin satisfacer antes los créditos de los acreedores.

Además, los solicitantes presentaron en evidencia el consentimiento a la partición, de aproximadamente diez acreedores. Ni el Crédito y Ahorro Ponceño, ni el Gobierno de Puerto Rico, los dos acreedores más fuertes, han comparecido a oponerse al nombramiento de un contador-partidor, a pesar del derecho que les confiere el artículo 1035 del Código Civil. ¿Por qué invocar entonces, en contra de la solicitud, derechos que corresponde ejercitar a los acreedores, y que no han creído ellos prudente ejercitar?

Las instrucciones que el finado dió al Sr. Cautiño, hablando ahora del tercer fundamento de oposición, sobre la división de su herencia, están limitadas a los $70,000 importe de la deuda de Sucrs. de José González & Cía., S. en C., y no a toda la herencia. No nos parece que esto equivale a investirle del cargo de contador-partidor.

Para que pueda cumplirse sin más dilación la voluntad del testador, *debe revocarse la resolución apelada y devolverse el caso a la corte de donde procede, con instrucciones de declarar con lugar la solicitud de los apelantes y proceder al nombramiento de un contador-partidor, de acuerdo con la*

*ley y la jurisprudencia aplicables, debiendo recaer el nombramiento en persona que no tenga interés alguno en la herencia y que no sea ni acreedor ni deudor del caudal hereditario.*