Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| RAMÓN LUIS GAS, INC. ET AL.<br><br>Peticionarios<br>v.<br><br>AGREGADOS NEGRÓN, INC., ET AL.<br><br>Recurridos<br><br>PROCURADORA DE ASUNTOS DE FAMILIA-CAROLINA<br><br>Interventora-recurrida | KLCE202400988 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Sobre: Daños y Perjuicios<br><br>Caso Núm.:<br>F DP2015-0012 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Mediante el recurso de *certiorari* comparece ante nos el *Sr. Ramón Luis Gas, et. als.* ("parte peticionaria") para que revisemos la *Resolución* dictada el **12 de agosto de 2024**,[1] por el Tribunal de Primera Instancia, Sala Superior de Carolina ("TPI"), que, en esencia, autorizó el acuerdo transaccional por la cantidad neta de $9,900.00; determinó que los honorarios de abogados no podían exceder del 25% en cuanto a la menor DDMCM; y, que el abogado *Ramón Díaz González* ("licenciado Díaz González") no podía cobrar sus honorarios hasta que la participación de la menor fuera adjudicada en un pleito de liquidación de herencia.

Luego de examinar los escritos de las partes, **expedimos** el *auto* solicitado y **revocamos** la *Resolución* recurrida. Veamos los fundamentos.

---

[1] Notificada el 19 de agosto de 2024.

**-I-**

De los *autos* ante nuestra consideración surge que el *Sr. Domingo Carmona Rohena* ("Carmona Rohena o causante") se reunió con el licenciado Díaz González referente a la contratación de los servicios de representación legal con el fin de instar una reclamación en daños y perjuicios relacionada a un accidente vehicular.[2] En la reunión, el señor Carmona Rohena y el licenciado Díaz González pactaron honorarios de abogados a contingencia —al 33%— más los gastos relacionados al proceso judicial. Posterior a dicha reunión, el **16 de enero de 2015** se presentó la *Demanda,*[3] contra *Transporte Negrón,* el *Sr. Israel Negrón Torres* y *Real Legacy Assurance Company, Inc.,* ("los demandados"). En síntesis, alegó que la causa única y exclusiva de la negligencia se debió a la falta de cuidado del conductor del camión—remolque, ya que era conducido de forma negligente y con claro menosprecio hacia la seguridad de los conductores. Reclamó la suma de: **$50,000.00** por los daños sufridos; **$80,000.00** por la pérdida económica de Ramón Luis Gas, Inc.; y, **$10,979.47** por los daños causados al vehículo de motor.

El **23 de abril de 2015**, los demandados contestaron conjuntamente la demanda.[4]

El **8 de mayo de 2015**, la parte peticionaria enmendó la demanda para incluir en la reclamación a *Puerto Rico Aggregates, Co.*[5] Adujo que dicha parte respondía solidariamente por los daños

---

[2] La parte peticionaria adujo que:
  *[E]l **21 de enero de 2014** […], el Sr. Juan R. Bajandas Rodríguez, manejaba por forma negligente y crasa el camión-remolque marca Kenworth, Motor Truck, 2001, tablilla RP8480 propiedad de Israel Negrón Torres y que arrastraba un tráiler (vagoneta) del año 2001 color gris, tablilla 68254-A a nombre de Agregados Negrón, Inc. A la altura de la entrada de la Cantera, intersección Camino Los Ruiz en **CAROLINA, PUERTO RICO**, el conductor, Juan R. Bajandas Rodríguez, observa que sale un camión de basura del Camino Los Ruiz, pero no se percata de que inmediatamente detrás de éste, transitaba el vehículo conducido por el codemandado, Domingo Carmona Rohena, una guagua Ford, F-250, año 2013, tablilla 920-506 e impacta al mismo con su parte frontal izquierda en la parte literal izquierda a dicho vehículo que transitaba por el Camino Los Ruiz detrás del camión de basura. [sic].* *Véase,* Anejo 4 del *Certiorari,* pág. 15.
[3] Anejo 2 del *Certiorari,* págs. 6 – 9.
[4] Anejo 3 del *Certiorari,* págs. 10 – 12.
[5] Anejo 4 del *Certiorari,* págs. 13 – 17.

ocasionados por el contratista independiente, ya que utilizó el vehículo en un camino vecinal. Añadió que el accidente y los daños ocurridos eran previsibles. Reiteró que la contraparte era responsable solidariamente de los daños y sufrimientos, por lo cual reafirmó las sumas reclamadas.

El **28 de agosto de 2015**, los demandados presentaron *"Contestación Enmendada a la Demanda enmendada"*.[6] Por su parte, el **3 de septiembre de 2015** *Puerto Rico Aggregates, Co.* sometió una contestación a demanda enmendada (en conjunto "los demandados").[7]

Aconteció que el **14 de enero de 2018** falleció el señor Carmona Rohena.[8] Ante una petición, el **1 de agosto de 2018** el TPI dictó una *Resolución* en el caso **CA2018CV00957** sobre la declaratoria de herederos del señor Carmona Rohena.[9] En dicha resolución declaró herederos forzosos al *Sr. Anthony Carmona Mojica*, la *Sra. Viannette Marie Carmona Mojica* y a la menor *DDMCM*. (En conjunto "Sucesión Carmona Rohena" o "parte peticionaria").

Con posterioridad, las partes del pleito llegaron a un acuerdo privado de transacción.[10] Por causa de la menor DDMCM, el **20 de febrero de 2024** el *"ACUERDO Y RELEVO PRIVADO DE TRANSACCIÓN"* fue sometido a la consideración del TPI para autorizar el mismo. El referido acuerdo estableció lo siguiente:

> **ACUERDO Y RELEVO PRIVADO DE TRANSACCIÓN**
>
> Comparecen a este acuerdo y relevo privado de transacción (en adelante denominado el "Acuerdo"), la parte demandante Ramón Luis Gas, Inc. y la Sucesión de DOMINGO CARMONA ROHENA compuesta por Anthony Carmona Mojica, Viannette Marie Carmona Mojica y Dianelys Del Mar Carmona Márquez, y esta última por ser menor de edad es representada por su madre con patria potestad Glorimar Márquez Meléndez y las partes codemandadas Agregados Negrón Inc., e Israel Negrón Torres, por encomienda de la Asociación de Garantías de Seguros Misceláneos de Puerto Rico (AGSM) en cuanto a la Orden de liquidación emitida para Real Legacy Assurance Company (RLA) y Asociación de Garantías de Seguros Misceláneos de

---

[6] Anejo 6 del *Certiorari*, págs. 22 – 25.
[7] Anejo 7 del *Certiorari*, págs. 26 – 29.
[8] Anejo 8 del *Certiorari*, a las págs. 42 – 43.
[9] *Íd.*
[10] *Íd.*, a las págs. 44 – 53.

*Puerto Rico (AGSM), por conducto de las representaciones legales que suscriben y exponen.*

***1.*** *Que las partes aquí comparecientes han llegado a un acuerdo transaccional el cual se describe a continuación pone fin a la totalidad de pleito:*

***a.*** *La parte co-demandante Ramón Luis Gas ha aceptado una transacción por la cantidad de veintidós mil dólares ($22,000.00). De esta cantidad se deducirá la suma de cien dólares ($100.00), según dispone el Código de Seguros de Puerto Rico en su capítulo 38. Ley 77 de 12 de junio de 1957, según enmendada. El Artículo 38.080 del Código de Seguros de Puerto Rico dispone que "La Asociación sólo pagará aquella cantidad a de cada reclamación cubierta que exceda de (100) dólares. Dicha cantidad será un deducible del cual no responderá el caudal del asegurador en liquidación". A esos efectos la cantidad a pagar seria veinte un mil novecientos dólares ($21,900.00). Debido a que existe una menor de edad parte de la sucesión co-demandante, es necesario que se celebre una Vista de Autorización Judicial y que sea aprobada dicha transacción mediante Resolución del Honorable Tribunal. Del Tribunal no aceptar la cantidad adjudicada a la menor, cualquier cantidad adicional saldrá de las partidas de los demás co-demandantes.*

***b.*** *La parte co-demandante, la Sucesión de DOMINGO CARMONA ROHENA compuesta por Anthony Carmona Mojica, Viannette Marie Carmona Mojica y Dianelys Del Mar Carmona Márquez, y esta última por ser menor de edad es representada por su madre con patria potestad Glorimar Márquez Meléndez, ha aceptado una transacción por la cantidad de diez mil dólares ($10,000.00). De esta cantidad se deducirá la suma de cien dólares ($100.00), según dispone el Código de Seguros de Puerto Rico en su capítulo 38, Ley 77 de 12 junio de 1957, según enmendada. El Artículo 38.080 del Código de Seguros de Puerto Rico dispone que "La Asociación sólo pagará aquella cantidad de cada reclamación cubierta que exceda de cien (100) dólares. Dicha cantidad será un deducible del cual no responderá el caudal del asegurador en liquidación". A esos efectos la cantidad a pagar sería nueve mil novecientos dólares ($9,900.00). Debido a que existe una menor de edad parte de la sucesión co-demandante, es necesario que se celebre una Vista de Autorización Judicial y que sea aprobada dicha transacción mediante Resolución del Honorable Tribunal. Se hace constar que la menor no sufrió daño alguno por los hechos alegados en la Demanda Del Tribunal no aceptar la cantidad adjudicada a la menor, cualquier cantidad adicional saldrá de las partidas de los demás co-demandantes. **La cantidad total a ser pagada a la Sucesión, será consignada en el Tribunal, luego de haber descontado el deducible correspondiente**.[11]*

***c.*** *Este pago se realizará, dentro del término de cuarenta y cinco (45) días luego de dictada la Sentencia con perjuicio en el caso, luego de celebrada la Vista de Autorización Judicial y haber sido emitida la Resolución correspondiente.*

***d.*** *En consideración a la estipulación y transacción antes mencionada, la parte demandante le otorga el más eficaz y completo relevo, a Agregados Negrón Inc., e Israel Negrón. Torres y a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM), por todas las alegaciones incluidas en la Demanda y cualquier enmienda*

---

[11] Énfasis nuestro.

*realizada a la misma, que incluyen, sin limitarse, a todos los daños y perjuicios alegados contractuales y extracontractuales, sobre la causa de acción por el cual se reclama en la presente Demanda.*

***e.*** *Que las partes demandantes, por medio del acuerdo antes descrito, interesan dar por terminado el presente caso y en su consecuencia solicitaran el archivo de este **con perjuicio**.*

**2.** *Mediante el presente acuerdo transaccional, la parte demandante desiste, releva, exonera y libera a Agregados Negrón Inc., e Israel Negrón Tires, su junta de directores, oficiales, accionistas y empleados, a la Asociación de Garantía de Seguros Misceláneas de Puerto Rico (AGSM), a sus aseguradores miembros, junta de directores, oficiales y empleados; a Real Legacy Assurance Company, asegurador en liquidación, al caudal de la liquidación, al Liquidador, oficiales, funcionarios y empleados, a sus compañías matrices, subsidiarias, accionistas, directores, funcionarios, empleados, sucesores, herederos, y a cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indicadas, compañías matrices, subsidiarias, a sus empleados, contratistas, agentes, sucesores, cesionarios, representantes legales y aseguradores, así como cualquier otra persona, corporación, asociación o sociedad, se hayan nombrado aquí o no, y quienes puedan serles obligados mancomunada o solidariamente a la parte demandante, de toda y cualquier responsabilidad, por todas las alegaciones que surgen de la Demanda y todos los daños y perjuicios alegados conocidos o no, por los cuales se reclama en la Demanda.*

**3.** *Las partes de este Acuerdo por este medio se relevan mutuamente, exoneran y para siempre liberan a Agregados Negrón Inc., e Israel Negrón Torres, su junta de directores, oficiales, accionistas y empleados, a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM), sus aseguradores miembros, junta de directores, oficiales y empleados; a Real Legacy Assurance Company, asegurador en liquidación, al caudal de le liquidación, al Liquidador, oficiales, funcionarios y empleados y sus compañías matrices, subsidiarias, accionistas, directores, funcionarios, empleados sucesores, herederos, y a cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indicadas, compañías matrices, subsidiarias, a sus empleados, contratistas, agentes, sucesores, cesionarios, representante legales y aseguradores, así como cualquier otra persona, corporación, asociación o sociedad, se hayan nombrado aquí o no, y quienes puedan serles obligados mancomunada o solidariamente a la parte demandante de toda pasada, presente y futura reclamación, reclamación de coparte, acción, demanda, demandas de tercero, procedimiento o controversia bajo cualquier ley federal, estatal, regulación, daños, gastos, gravámenes, honorarios, deudas, contratos, acuerdos o promesas, cualquiera que sea o pueda ser, sea en ley o equidad, conocida, sospechada o insospechada, previsible o no, anticipa o no, de cualquier clase, incluyendo cualquier consecuencia que la misma pueda tener, tuvo o pudiera tener por razón de cualquier materia, causa o cosa pasada, presente o futura, conocida o no, como resultado de la reclamación en controversia en esta acción iniciada por la parte demandante y cualquier otra reclamación que pudiese haber sido instada por cualquier parte, por los mismos hechos que dan origen a este pleito, incluyendo demandas de coparte y de tercero.*

**4.** *En adición, este Acuerdo incluye, pero no está limitado a todas las reclamaciones, acciones, demandas o responsabilidades bajo el Código de Seguros de Puerto Rico, el Código Civil de Puerto Rico y cualquier otra ley federal o de Puerto Rico,*

*incluyendo, pero no limitado a cualquier y toda reclamación por daños de cualquier tipo, sean estos contractuales o extracontractuales, entre otros, presentes o futuros, conocidos o desconocidos, por daños físicos, emocionales, económicos, daños especiales, así como cualquier otro establecido por equidad ("equity"), o mediante precedente de derecho común o estatutario, cualquiera que surja o esté relacionada directa o indirectamente con los alegados incidente o materias sujetas a esta causa de acción, pasada, presente o futura, conocida o no, como resultado de la reclamación en controversia en esta acción iniciada por la parte demandante, y cualquier otra que pudiese haber sido instada por cualquiera de las partes por los mismos hechos que dan origen a este pleito.*

**5.** *Las partes aquí comparecientes expresamente estipulan que el presente Acuerdo y Relevo Privado Transaccional tendrá el efecto de cosa juzgada.*

**6.** *La parte demandante reconoce y está consciente que el relevo relacionado en el presente documento es un relevo general y total. La parte demandante expresamente asume el riesgo de todas las reclamaciones por daños, o cualquier otro tipo, que puedan existir a la fecha de hoy, que le parte demandante no conozca o sospeche que exista, ya sea por ignorancia, error, inadvertencia, negligencia u otras razones y, una vez conocida, pueden afectar su decisión de entrar en el presente acuerdo. La parte demandante, además, acuerda que ha aceptado el pago de la suma anteriormente señalada como pago total y en finiquito de las causas de acción que envuelven cuestiones de hecho y de derecho relacionadas directa o indirectamente con la presente acción.*

**7.** *La parte demandante presentará un Desistimiento con Perjuicio de la Demanda en el caso de epígrafe una vez suscrito este presente Acuerdo y Relevo Privado de Transacción y emitida la correspondiente Resolución, sobre la Vista de Autorización Judicial.*

**8.** *Las partes aquí comparecientes renuncian mutuamente a toda reclamación por concepto de honorarios de abogados costas.*

**9.** *La parte demandante se responsabiliza del pago de cualquier suma de dinero que le corresponda at Departamento de Hacienda, al Servicio de Rentas Internas de los Estados Unidos ("IRS", por sus siglas en inglés), o cualquier otra entidad de Puerto Rico, Federal o Municipal, si alguna, por razón del presente acuerdo. A su vez, también se responsabiliza del pago de cualquier suma de dinero que le corresponda a otras agencias, departamentos, instrumentalidades o corporaciones estatales, federales, o municipales, o entidades cuasi-públicas, creadas en virtud de alguna ley, no mencionadas en el presente Acuerdo, incluyendo, pero sin limitarse a la Administración da Compensaciones por Accidentes de Automóviles, la Corporación del Fondo del Seguro del Estado, Medicare, Medicaid, IRS, Administración del Seguro Social y cualquier otra entidad gubernamental, pública o cuasi-pública creada por ley, que surja como consecuencia de los hechos contenidos en la Demanda y del acuerdo presentado.*

**10.** *De existir alguna obligación de reembolso por cualquiera de dichos conceptos antes mencionados, la Asociación de Garantía de Seguros Misceláneas de Puerto Rico (AGSM), Agregados Negrón Inc. e Israel Negrón Torres se reservan al derecho de descontar de la cantidad pagadera a la parte demandante en virtud de este acuerdo, la cantidad debida a cualesquiera de las entidades mencionadas en el párrafo anterior, para hacer directamente el pago a cualesquiera de dichas entidades.*

**11.** *La parte demandante acuerda que Agregados Negrón Inc., e Israel Negrón Torres, su junta de directores, oficiales, accionistas*

*y empleados, la Asociación de Garantía de Seguros Misceláneas de Puerto Rico (AGSM), sus aseguradores miembros, junta de directores, oficiales y empleados; Real Legacy Assurance Company, asegurador en liquidación, el caudal de la liquidación, el Liquidador, oficiales, funcionarios y empleados, sus compañías matrices, subsidiarias, accionistas, directores, funcionarios, empleados, sucesores, herederos, y cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indiada, compañías matrices, subsidiarias, a sus empleados, contratistas, agentes, sucesores, cesionarios, representantes legales y aseguradores, no son responsables por la determinación de cualquier agencia o corporación pública del gobierno, ya sea de Puerto Rico o Federal o del Gobierno Municipal, sobre el trato fiscal a ser dado a las respectivas cantidades de dinero aquí acordadas, por lo que la parte demandante se compromete a dejar a salvo ("hold harmless") a Agregados Negrón Inc., e Israel Negrón Torres su junta de directores, oficiales y empleados, a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM), sus aseguradores miembros, junta de directores, oficiales y empleados; asegurador en liquidación, el caudal de la liquidación, el Liquidador, oficiales, funcionarios y empleados, sus compañías matrices, subsidiarias, accionistas, directores, funcionarios, empleados, sucesores, herederos y cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indicadas, compañías matrices, subsidiarias, a sus empleados, contratistas, agentes, sucesores, cesionarios, representantes legales y aseguradores, de toda pasada, presente y futura reclamación, y cualquier responsabilidad de impuestos o fiscal, o cantidad de dinero reclamada por una agencia de gobierno, departamento, negociado, servicio o corporación pública del Gobierno de Puerto Rico, del Gobierno Federal o del Gobierno Municipal.*

**12.** *El paso de la suma en transacción se hace en consideración a la reclamación de daños y perjuicios, por lo que no se retiene cantidad alguna por concepto de contribuciones sobre ingresos, ni de ningún otro tipo. De existir cualquier reclamación por pérdida de ingreso de cualquier tipo por la parte demandante, queda por la presente expresamente desistida y renunciada. La parte demandante asume la responsabilidad del pago total de cualquier contribución o impuesto que se derive del pago de la cuantía transaccional aquí acordada y expresamente releva a Agregados Negrón Inc., e Israel Negrón Torres, su junta de directores, oficiales, accionistas y empleados, a le Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM), a sus aseguradores miembros, junta de directores, oficiales y empleados; a Real Legacy Assurance Company, asegurador en liquidación, al caudal de la liquidación al Liquidador, oficiales, funcionarios, empleados, a sus compañías matrices subsidiarías, accionistas, directores, funcionarios, empleados, sucesores, herederos, y a cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indicadas, compañías matrices, subsidiarias a sus empleados, contratistas, agentes, sucesores, cesionarios, representantes legales y aseguradores, de todo y cualquier pago por dicho concepto. Este documento contiene la totalidad de los acuerdos entre las partes con relación a este caso y el mismo trasciende y deja sin efecto cualquier acuerdo, oferta, entendido o compromiso anterior escrito o verbal, con relación a los incidentes que dan lugar a la Demanda. Los términos de este acuerdo se regirán y gobernarán por las leyes del Estado Libre Asociado de Puerto Rico. Por otra parte, de reclamar Medicare alguna suma por virtud de este Acuerdo, la parte demandante y su representante legal asumen incondicionalmente toda responsabilidad legal y de pago que pudiera existir por virtud de la Ley "Medicare, Medicaid, and SCHIP Extension Act' of 2007" (MMSEA) (P.L.110-173) y libera de*

tal a National Lumber Hardware Inc. y Diamond Security, lnc. su junta de directores, oficiales, accionistas y empleados, a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM), a sus aseguradores miembros, junta de directores, oficiales y empleados; Real Legacy Assurance Company, asegurador en liquidación, al caudal de le liquidación, al Liquidador, oficiales, funcionarios y empleados a sus compañías matrices, subsidiarias, accionistas, directores, funcionarios, empleados, sucesores, herederos, y a cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indicadas, compañías matrices, subsidiarias, a sus empleados, contratistas, agentes, sucesores, cesionarios. representantes legales y aseguradores, si las hubiere.

**13.** *La parte demandante reconoce que reclama daños por concepto de angustias mentales, emocionales y físicos en el caso de epígrafe por lo que, reconoce que la Ley "Medicare, Medicaid, and SCHP Extension Act of 2007" (MMSEA) (P.L.110-173) aplica a este Acuerdo. La parte demandante representa que ni el causante, ni los miembros de su sucesión son beneficiaria de Medicare y/o Medicaid.*

**14.** *La demandante entiende y acuerda que ha provisto la siguiente información y/o ha entregado y/o se compromete a entregar a la demandada, para propósitos del cumplimiento con la Sección III del "Medicare, Medicaid y SCHIP Extension Act" del año 2007:*

    **a.** *El número de seguro social de la parte demandante, incluyendo los miembros de la sucesión;*

    **b.** *Cualquier número de reclamación de Seguro de Salud de Medicare;*

    **c.** *La fecha de nacimiento de cada uno de los demandantes y miembros de la sucesión;*

    **d.** *El Formulario de Medicare debidamente cumplimentado donde establece que es beneficiario de Medicare el cual se adjunta y forma parte integral del presente Acuerdo;*

**15.** *En la eventualidad de que la información provista por la parte demandante en este documento sea falsa, incompleta o incorrecta, la parte demandante acuerda y hace constar que ella será la única responsable de asumir los costos y gastos de cualesquiera y de todas las acciones, causas de acción, penalidades, multas, reclamaciones, costos, servicios y compensaciones que cualquier entidad pública o cuasi pública, federal o estatal puedan reclamar.*

**16.** *Las partes acuerdan esta transacción con el propósito de evitarse los inconvenientes, molestias y riesgos inherentes a todo litigio, sin admisión de responsabilidad, culpa, negligencia por parte de Agregados Negrón lnc., e Israel Negrón Torres, su junta de directores, oficiales, accionistas y empleados, la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM), sus aseguradores miembros, junta de directores, oficiales y empleados; Real Legacy Assurance Company, asegurador en liquidación, el Liquidador, sus oficiales, funcionarios y empleados, sus compañías matrices, subsidiarias, accionistas, directores, funcionarios, empleados, sucesores, herederos, y cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indicadas, compañías matrices subsidiarias, sus empleados, contratistas, agentes, sucesores, cesionarios, representantes legales y aseguradores.*

**17.** *La parte demandante releva a Agregados Negrón lnc., e Israel Negrón Torres, su junta de directores, oficiales, empleados, accionistas, a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM), a sus aseguradores miembros, junta de directores, oficiales y empleados; a Real Legacy Assurance*

*Company, asegurador en liquidación, al caudal de la liquidación, al Liquidador, oficiales, funcionarios y empleados, a sus compañías matrices, subsidiarias, accionistas, directores, funcionarios, empleados, sucesores, herederos y a cualesquiera otras partes relacionadas directa o indirectamente con las partes aquí indicadas, compañías matrices, subsidiarias, a sus empleados, contratistas, agentes, sucesores, cesionarios, representantes legales y aseguradores, de cualquier reclamación, presente o futura, conocida o no, que cualesquiera agencia, planes médicos, Medicare, médico u hospital pudiera ejercitar, haciendo valer algún derecho de subrogación o recobro en contra de la parte demandante.*

**18.** *En caso de incumplimiento de alguna de las partes, la sala donde se ventila el caso retendrá jurisdicción para compeler a cualquiera de les partes a su cumplimiento sin necesidad de instar un pleito aparte de incumplimiento de contrato.*

**19.** *Las partes y sus abogados se obligan mutuamente a no divulgar a ninguna persona, natural o jurídica el presente acuerdo, ni el contenido de este, incluyendo, pero sin limitarse a la cuantía y alcance del mismo, ni sus pormenores a excepción de órdenes de autoridades, agencias, instrumentalidades, departamentos o ramas del gobierno, estatales, federales o municipales, con jurisdicción y competencia sobre el asunto. El mismo tiene que mantenerse permanentemente de forma confidencial conforme a lo antes expresado. De alguna de las partes y/o sus abogados violentar, divulgar o de cualquier otra manera incumplir con el acuerdo privado o la confidencialidad del mismo estará sujeta a responderle a la otra parte, incluyendo, bajo las disposiciones y doctrinas legales aplicables a la resolución o rescisión de los contratos o daños por el incumplimiento de los mismos, o a la equidad ("equity"), entre otras doctrinas aplicables.*

**20.** *Lo aquí expresado constituye la intención libre, voluntaria e inteligente de las partes, por lo que las mismas expresamente lo avalan y suscriben por conducto de sus respectivos abogados, siendo ésta la ley entre las partes. […].*[12]

El **20 de febrero de 2024**, la Sra. Glorimar Márquez Meléndez, la Sra. Carolyn De León Luciano y el Sr. Gamalier Márquez Meléndez —madre y tíos con custodia y facultades titulares de la menor DDMCM— presentaron una *URGENTE PETICIÓN SOBRE AUTORIZACION JUDICIAL EN TRANSACCIÓN DE LA MENOR […].*[13] En resumen, —y en lo concerniente a la menor DDMCM— sometieron las consideraciones acordadas extrajudicialmente para la transacción del caso, entre ellas, que el licenciado Díaz Gonzalez cobraría la cantidad de $933.33 en concepto de honorarios de abogado por el 25% referente a la referida menor, y el remanente de $2,500.00, sería consignado en una cuenta en el TPI.

---

[12] *Íd.*
[13] Anejo 8 del *Certiorari*, a las págs. 30 – 53.

El **27 de febrero de 2024**, la *Procuradora de Asuntos de la Familia* ("Procuradora") sometió: <u>*Informe Fiscal En Torno A Urgente Petición De Autorización Judicial*</u>.[14] En lo pertinente, indicó que:

> *1. Hemos sido notificados de una petición de autorización judicial para transigir una reclamación en daños y perjuicios donde la parte co-demandante es la Sucesión de Domingo Carmona Rohena y uno de los miembros de la referida sucesión es una menor de edad. Unido a la petición, se incluyeron una serie de documentos, los cuales tuvimos la oportunidad de revisar.*
>
> *[…]*
>
> *5. Por otro lado, de manera equivoca se indica en la referida petición de autorización judicial en el inciso 6 de la misma que* <u>*"[las partes transigieron extrajudicialmente la reclamación de epígrafe en cuanto a la menor, en la cantidad de $3,333.33, es decir, sobre la transacción concedida para los herederos forzosos del señor Carmona Rohena ascendiente a $10,000.00 y divididos entre los tres (3) herederos es igual a $3333.33 para cada uno de ellos"*</u>.
> *6.* <u>*Lo vertido por la parte co-demandante en el inciso antes mencionado tiene el efecto de una partición parcial sobre una participación alícuota de la menor en los haberes de la Sucesión de Domingo Carmona Rohena, acción totalmente improcedente en derecho*</u>.
> *7.* <u>*Como cuestión de hecho, cualquier tipo de transacción con relación a la Sucesión Carmona Rohena tiene que consignarse en el tribunal a nombre de la misma hasta tanto se lleve a cabo el proceso de partición de herencia*</u>.
> *8. Es en ese proceso donde se hace la adjudicación correspondiente a cada heredero sobre todos los bienes del causante.* <u>*Mientras dicho proceso no se lleve a cabo, los herederos de Domingo Carmona Rohena lo que ostentan es una participación alícuota sobre todos los bienes del causante*</u>.
> *9. En cuanto a la cantidad sobre los honorarios de abogados, de igual forma tendríamos que oponernos, en estos momentos, por los fundamentos antes expresados.* <u>*A la fecha de esta moción se desconoce qué cantidad finalmente le será adjudicada a la menor como consecuencia del proceso de participación de herencia por lo que no podemos allanarnos ni aprobar cantidad alguna si no tenemos la cantidad especifica y determinada de lo que será adjudicado a la menor*</u>.
> *10. Es en virtud de esto que todos los miembros de la Sucesión Carmona Rohena tendrían que consentir a la totalidad de la transacción sin que se especifique cantidad alguna atribuible de manera individual.*
> *[…].*[15]

En respuesta, la parte peticionaria presentó <u>*Urgente Reacción Al 'Informe Fiscal En Torno A Urgente Petición De Autorización Judicial'*</u>.[16] Entre otras cosas, alegó que los honorarios de abogados se pautaron a razón del 33% como cantidad acordada. Además, reclamó que se autorizara el pago de $300.00 por costas cubiertas

---

[14] Anejo 9 del *Certiorari*, a las págs. 54 – 56.
[15] *Íd.*, a las págs. 54 – 55. Énfasis nuestro.
[16] Anejo 10 del *Certiorari*, págs. 57 – 60.

en el pleito. Por último, adujo que ningún miembro de la Sucesión Carmona Rohena se opuso a dicho reclamo.

Trabada ahí la controversia, el TPI celebró una *Vista de Autorización Judicial.* A esta comparecieron: la Procuradora; el Sr. Anthony Carmona Mojica y la Sra. Viannette Carmona Mojica, por sí y representados por el licenciado Díaz Gómez; la menor DDMCM, por sí y representada por su madre y el licenciado Díaz Gómez; y los demandados representados por la Lcda. Nilda Joglar Irizarry.[17]

El **12 de agosto de 2024**,[18] el TPI emitió una Sentencia y determinó lo siguiente:

> *Examinado el acuerdo transaccional sometido el 20 de febrero de 2024 por las partes en el caso de epígrafe [...], el cual se une y se hace formar parte de la presente Sentencia, el Tribunal le imparte su aprobación y dicta sentencia conforme a los términos y condiciones expresados en dicho documento.*
> *Las partes estarán sujetas al fiel y estricto cumplimiento de todos los compromisos, obligaciones y estipulaciones que entre sí y que ante el tribunal han asumido. Se apercibe a las partes que el incumplimiento de las obligaciones acordadas dará lugar a las medidas y procedimientos también acordados para el caso de incumplimiento de lo pactado, más cualquier otra medida o sanción que el tribunal pueda entender apropiada conforme al incumplimiento, sus circunstancias y el derecho aplicable.*
> *Según pactado entre las partes, esta sentencia será final, firme e inapelable desde la fecha de su emisión, y se ordena el archivo y sobreseimiento definitivo del caso.*[19]

**En igual fecha**, el TPI emitió una *Resolución* recurrida y en lo pertinente,[20] expresó:

> *[E]n la demanda de autos los demandantes reclamaron que se les indemnizaran, entre otras cosas, los daños que sufrió Carmona Rohena como consecuencia de las presuntas actuaciones negligentes de los demandados que ocasionaron el accidente automovilístico objeto de este pleito.*
> [...]
> *Los herederos de Carmona Rohena, aquí codemandantes, informaron al tribunal que aceptaron la oferta de los demandados para transigir la causa de acción de su padre por $10,000 porque estiman que dicha cantidad es razonable cuando consideran la naturaleza, la extensión y la duración de los daños que éste sufrió. Los hermanos Carmona expresaron haber formalizado el acuerdo transaccional libre y voluntariamente, sin que fueran coaccionados u obligados a ello. Manifestaron entender las consecuencias del acuerdo transaccional, entre éstas, que no podrán instar acciones adicionales por los hechos alegados en*

---

[17] Anejo 1 del *Certiorari*, a la pág. 2.
[18] Notificado el 19 de agosto de 2024.
[19] Anejo 11 del *Certiorari*, págs. 65 – 66.
[20] Anejo 1 del *Certiorari*, págs. 1 – 5.

*la petición,* **que el producto de la transacción será consignado en la secretaría del tribunal en beneficio de la sucesión Carmona Rohena y que el dinero allí depositado sólo podrá retirarse cuando los hermanos Rohena liquiden la comunidad hereditaria existente entre ellos**. *Los hermanos Carmona manifestaron entender que el recibo de sus respectivas participaciones en esta transacción está sujeto a que existan activos para distribuir o adjudicar entre ellos después de que se liquiden las deudas y cargas que puedan gravar la herencia de su padre.*

*Carmona Márquez y su madre con patria potestad Glorimar Márquez Meléndez expresaron entender y estar de acuerdo que la participación de la primera en esta transacción* **quedará consignada en el tribunal hasta que advenga a la mayoría de edad, y que dichos fondos, de forma extraordinaria, sólo se podrán retirar con la autorización del tribunal cuando, por razones justificadas, Márquez Meléndez no pueda proveer las necesidades de la menor**. *Los peticionarios de autos también manifestaron entender que la parte demandada descontará de los $10,000 acordados $100 como deducible dispuesto en el Código de Seguros para casos como el de autos,* **por lo que el producto neto de la transacción alcanzada por los hermanos Carmona será de $9,900.**

**Por otra parte, resolvemos que los honorarios del licenciado Ramón Díaz Gómez respecto a Carmona Márquez no excederán el 25% de su participación en la transacción objeto de esta resolución y que no podrán cobrarse hasta que la participación de la menor le sea adjudicada en el pleito que se presentará oportunamente para liquidar la herencia de Carmona Rohena y ésta quede consignada en la secretaría del tribunal en una cuenta bancaria para su beneficio exclusivo.** *Por último, destacamos que la Procuradora de Relaciones de Familia recomendó la aprobación de la transición informada al tribunal.*

*Conforme con la prueba admitida, este tribunal declara Ha Lugar la petición de autorización judicial de autos por entender que la transacción según informada es adecuada y razonable, y que la distribución del dinero entre los demandantes es proporcional a sus respectivas participaciones en la herencia de Carmona Rohena. El Tribunal quedó convencido de que el bienestar de la menor Carmona Márquez quedó salvaguardado con la transacción informada al tribunal en esta petición de autorización judicial.*

<u>*La participación de la menor Carmona Márquez equivale a una tercera parte de la transacción neta aprobada por este tribunal, y estará sujeta a los resultados de las operaciones particionales que se realizarán en el pleito sobre liquidación de la comunidad hereditaria dejada por Carmona Rohena.*</u> *El tribunal concede 20 días a los demandados, contados a partir de la fecha en que se registre y archive en autos esta resolución, para consignar en la unidad de cuentas de este Tribunal los $9,900 de la transacción autorizada en esta resolución. La secretaria del tribunal abrirá una cuenta de ahorros en favor de la sucesión Carmona Rohena la cual está integrada por la menor. Carmona Márquez y los hermanos Carmona Mojica. Se ordena a la parte demandante, y especialmente a Glorimar Márquez Meléndez, que mantenga informado al tribunal sobre cualquier cambio en el domicilio o en la dirección residencial de la menor.*[21]

---

[21] Anejo 1 del *Certiorari*, págs. 3 – 5. *Énfasis & Subrayado nuestro.*

En desacuerdo, el **16 de septiembre de 2024** la parte peticionaria presentó ante nos el *auto* de *certiorari* y señaló que los siguientes tres (3) errores:

> 1. *Erró el TPI al determinar que, en el caso de daños perjuicios culminado, no se podrá cobrar honorarios de abogados hasta que la participación de la menor le sea adjudicada en el pleito que se presentará oportunamente para liquidar la herencia de Carmona Rohena.*
> 2. *Erró el TPI al determinar que, en el caso de daños perjuicio culminado, en el que el causante fue sustituido por su sucesión, lo honorarios respecto a la menor Carmona Márquez no excederá el 25% de su participación en la transacción.*
> 3. *Erró el TPI al no aprobar que costas del proceso cubiertas por el abogado sean reembolsables.*

El **30 de septiembre de 2024**, compareció el Procurador General de Puerto Rico ("Procurador") en representación de la Procuradora de Asunto de Familia.

Con la comparecencia las partes, el recurso quedó perfeccionado para su resolución.

-II-

-A-

El Tribunal Supremo de Puerto Rico ha señalado que el auto de *certiorari* constituye *"[u]n vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior"*.[22] Por discreción se entiende el *"[t]ener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción"*.[23]

Por ello, la Regla 52.1 de Procedimiento Civil,[24] delimita las instancias en que este foro habrá de atender y revisar mediante *certiorari* las resoluciones y órdenes emitidas por los tribunales de instancia, a saber:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones*

---

[22] *Municipio Autónomo de Caguas v. JRD Construction, Inc., et al,* 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).
[23] *García v. Asociación,* 165 DPR 311, 321 (2005).
[24] *Reglas de Procedimiento Civil de 2009,* 32 LPRA Ap. V., R. 52.1.

*cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por <u>excepción</u> a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […].*[25]

Con el objetivo de que podamos ejercer de una manera prudente nuestra facultad discrecional delegada —para entender o no en los méritos del asunto esbozado en este recurso— contamos con la Regla 40 del Reglamento del Tribunal de Apelaciones,[26] que nos dicta los siguientes criterios para la expedición de un auto de certiorari o de una orden para mostrar causa:

A. *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
B. *Si la situación de hechos planteada es la más indicada para el análisis del problema.*
C. *Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
D. *Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
E. *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
F. *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
G. *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.* [27]

Por lo que al tener discreción judicial para expedir o denegar el auto de *certiorari*, el Tribunal Supremo de P.R., ha dispuesto que:

*[D]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho*

---

[25] *Íd.*
[26] Regla 40 del *Reglamento del Tribunal de Apelaciones*, 4 LPRA Ap. XXII-B, R.40.
[27] *Íd.*

*sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[28]

**-B-**

Con la muerte de una persona se produce la apertura de su sucesión, y con ella nace, para determinados parientes, el derecho a adquirir la propiedad y la posesión de los bienes que constituyen el caudal hereditario.[29] Por ello, la herencia consiste en *"todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte"*.[30] Es decir, al fallecer el causante, los herederos lo suceden en todos sus derechos y obligaciones.[31] El contenido de ambos artículos precitados, son muestras de que en nuestro derecho sucesorio la herencia se compone de las relaciones jurídicas activas y pasivas que componían el patrimonio de la persona a la fecha de su muerte.[32]

Desde entonces, y como norma general, en Puerto Rico, *"la posición jurídica del causante se [mantiene] en lo posible inalterable, con la colocación del heredero en su lugar"*.[33] Ello es así, desde principio del Sigo XX cuando se reconoció que la sustitución del causante por su heredero constituye una **continuación** de su personalidad.[34] Por tal razón, los derechos y obligaciones patrimoniales son transmisibles por herencia, salvo aquellos que,

---

[28] *Íd.*; *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[29] *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 177 (2005), citando *Arrieta Barbosa v. Vda. de Arrieta*, 139 DPR 525, 532-533 (1995).
[30] Art. 608 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 2090. El *"Código Civil de Puerto Rico" de 1930*, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.*, y entró en vigor el 28 de noviembre de 2020. No obstante, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior.
[31] Art. 210 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 2092.
[32] *Island Holdings v. Sucn. Hernández Ramírez*, 201 DPR 1,026, 1036-1,037(2019), citando en aprobación a *Sucesión Álvarez Crespo v. Pierluisi*, 150 DPR 252, 266 (2000); el Art. 601 del Código Civil, 31 LPRA sec. 2083; J.R. Vélez Torres, Curso de Derecho Civil: *Derecho de Sucesiones, 2da ed. rev.*, San Juan, Ed. Rev. Jur. U.I.A., 1992, T. IV, V. III, pág. 8.
[33] *Island Holdings v. Sucn. Hernández Ramírez, supra*, citando en aprobación a *Torres, Torres v. Torres Serrano*, 179 DPR 481, 497 (2010); *Feliciano Suárez, Ex parte*, 117 DPR 402, 413 (1986); *Robles Menéndez v. Tribunal Superior*, 85 DPR 665, 672 (1962); *Arroyo v. Fernández*, 68 DPR 514, 517 (1948).
[34] *Sucesión Dávila v. El Registrador de la Propiedad*, 15 DPR 669, 673 (1909).

KLCE202400988                                                                16

por sus características, disposición de ley o pacto sean intransmisibles.[35]

En otras palabras, *"generalmente los derechos y las obligaciones contractuales asumidas por una persona no se extinguen con su muerte; más bien, estas encuentran continuidad en la sucesión"*.[36] Por ello, se acuña el principio *"antes pagar que heredar"*, una liquidación del caudal hereditario requiere que, previo a dividirse y adjudicarse la herencia, se proceda al cobro de créditos, al pago de deudas y, una vez efectuado y determinado el sobrante, se dividan y adjudiquen los bienes entre los partícipes.[37]

Por lo tanto, el principio de primero se paga y luego se hereda, significa que, hasta que no se paguen las deudas del caudal, los herederos no tienen derecho preferente a parte alguna de la herencia.[38]

Entonces, en una sucesión de más de un heredero —llamado a la universalidad de la herencia— surge una comunidad hereditaria entre ellos.[39] Por lo que, durante la vigencia de dicha comunidad, los herederos van a ser titulares de una cuota en abstracto sobre todos los bienes que formen parte del caudal relicto; pero no van a ser titulares de los bienes particulares.[40]

Por consiguiente, de adjudicarse **algún activo** de la herencia a la menor *DDMCM*, es entonces, que se consignará en el tribunal hasta que advenga a la mayoría de edad, y que dichos fondos, de forma extraordinaria, solo se podrán retirar con la autorización

---

[35] *Torres, Torres v. Torres Serrano, supra*, pág. 497; Arts. 549, 1065 y 1209 del Código Civil de Puerto Rico, 31 LPRA ant. secs. 1931, 3029 y 3374.
[36] *Torres, Torres v. Torres Serrano, supra*, pág. 497. Véase, también, Art. 600 del Código Civil, 31 LPRA ante. sec. 2082.
[37] *Island Holdings v. Sucn. Hernández Ramírez, supra*, citando en aprobación al tratadista J. Cuevas Segarra y A. Román García, *Derecho sucesorio comparado: Puerto Rico y España*, San Juan, Pubs. JTS, 2003, pág. 395. Énfasis nuestro.
[38] *Ruiz v. Ruiz*, 74 DPR 347, 351 (1953); *Ex Parte: Cautiño*, 51 DPR 475, 483 (1937). Énfasis nuestro.
[39] *Vega Montoya v. Registrador*, 179 DPR 80, 87 (2010).
[40] *Íd.*, a la pág. 89.; *In re Torres Rivera*, 204 DPR 1, 14 (2020), citando a *Kogan v. Registrador*, 125 DPR 636, 652 (1990).

judicial cuando, por razones justificadas, la señora Márquez Meléndez no pueda proveer las necesidades de la menor.

En fin, la condición dejará de existir tan pronto se liquide el patrimonio del causante *(primero se paga y luego se hereda)*, y se adjudiquen a los herederos los bienes particulares que les corresponden de la herencia.[41]

**-III-**

La parte peticionaria, por conducto del licenciado Díaz González, recurre ante nos y señala la comisión de tres (3) errores; los cuales se resumen en dos (2), a saber: erró el TPI al no determinar que la Sucesión Carmona Rohena fue la que heredó la acción en daños junto con el acuerdo de honorarios de abogados a contingencia —al 33%— más los gastos de $300.00 cubiertos por el abogado en la tramitación judicial. Además, incidió al concluir que en este caso no se podría cobrar dichos honorarios de abogados en contingencia, hasta que la participación de la menor *DDMCM* le fuera adjudicada en la liquidación de la herencia. Le asiste la razón. Veamos.

Del expediente surge que el señor Carmona Rohena se reunió con el licenciado Díaz González para que lo representara en una acción en daños y perjuicios. Finalmente, pactaron honorarios de abogados a contingencia —al 33%— más los gastos relacionados a la reclamación judicial. No obstante, el señor Carmona Rohena falleció en plena acción judicial, por lo que fue sustituido por sus herederos universales: el *Sr. Anthony Carmona Mojica*, la *Sra. Viannette Marie Carmona Mojica* y a la menor *DDMCM (representada por su madre)*; en conjunto la sucesión Carmona Rohena. Por consiguiente, la referida Sucesión acordó continuar con el pleito bajo los mismos acuerdos pactados con el causante.

---

[41] *Vega Montoya v. Registrador, supra*, a la pág. 89, citando a *Arrieta v. Chinea Vda. de Arrieta, supra.*

Una vez se logra el *ACUERDO Y RELEVO PRIVADO DE TRANSACCIÓN,* el **12 de agosto de 2024** el TPI le impartió su aprobación y dictó una Sentencia.[42] No obstante, ese mismo día el tribunal emitió la consabida Resolución recurrida que hoy nos ocupa.

**De entrada**, hay que distinguir que el acuerdo transaccional en el presente caso es de la Sucesión de Carmona Rohena, y no, una transacción de un menor en particular, ya que al fallecer el señor Carmona Rohena fue sustituido por los miembros de la Sucesión que se subrogaron a los derechos y obligaciones del causante. Recordemos que: *"la herencia comprende todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte".*[43] Es decir, en este pleito *"los herederos suceden al difunto por el hecho solo de su muerte, en todos sus derechos y obligaciones".*[44]

Por lo tanto, erró el TPI al no reconocer que la Sucesión Carmona Rohena viene obligada por el contrato de honorarios de abogados a contingencia —33%— más los gastos de $300.00 celebrado entre el causante y el licenciado Díaz González. En fin, no es de aplicación los honorarios de abogados a contingencia de 25% por causa de la menor *DDMCM,* ya que los honorarios contingentes al 33% se pactaron con el señor Carmona Rohena, y luego de su fallecimiento, la menor y el resto de los herederos universales advinieron al pleito en sustitución del causante como miembros de la Sucesión Carmona Rohena. En palabras sencillas, la Sucesión Carmona Rohena heredó los derechos y obligaciones patrimoniales del pleito de epígrafe que le fueron transmisibles por herencia.

De igual modo, no cabe hablar de que los honorarios de abogados a contingencia —33%— más los gastos de $300.00 no se

---

[42] Luego de celebrar una vista con todas las partes. Notificado el 19 de agosto de 2024.
[43] Art. 608 del Código Civil de 1930, *supra.*
[44] Art. 610 del Código Civil de 1930, 31 LPRA ant. sec. 2092.

podrán cobrar por el licenciado Díaz González, hasta que la participación de la menor *DDMCM* le sea adjudicada en el proceso que se presentará para liquidar la herencia de la Sucesión Carmona Rohena. Nótese, que la representación legal del licenciado Díaz González **culminó** con el aval al *ACUERDO Y RELEVO PRIVADO DE TRANSACCIÓN,* que el **12 de agosto de 2024** el TPI le impartió mediante Sentencia. Entonces, reiteramos el principio *"antes pagar que heredar",* por lo que una liquidación del caudal hereditario requiere que, previo a dividirse y adjudicarse la herencia, se proceda al cobro de créditos, al pago de deudas y, una vez efectuado y determinado el sobrante, se dividan y adjudiquen los bienes entre los partícipes.[45]

A tono con lo antes expuesto, procede a que se paguen los honorarios de abogados contingentes al 33%, equivalentes a $3,300.00 más $300.00 por concepto de gastos para un total de **$3,600.00** a ser restados de los **$9,900.00** que fueron depositados a la Sucesión Carmona Rohena en el TPI. Por lo cual, la cantidad restante de **$6,300.00** permanecerá depositada en el tribunal a nombre de la referida sucesión hasta que estos finalmente procedan con la partición y adjudicación de la herencia.

Por consiguiente, de adjudicarse **algún activo** de la herencia a la menor *DDMCM,* es entonces, que se consignará en el tribunal hasta que advenga a la mayoría de edad, y que dichos fondos, de forma extraordinaria, solo se podrán retirar con la autorización judicial cuando, por razones justificadas, la señora Márquez Meléndez no pueda proveer las necesidades de la menor.

En fin, expedimos el auto de *certiorari* y **revocamos** la Resolución recurrida. Así, ordenamos al TPI a que proceda con el pago al licenciado Díaz González equivalentes a $3,300.00 por

---

[45] *Island Holdings v. Sucn. Hernández Ramírez, supra.*

concepto de honorarios de abogados contingentes al 33%, más $300.00 por gastos de trámite del pleito para un total de **$3,600.00**, a ser restados de los **$9,900.00** que fueron depositados en el tribunal.

**-IV-**

Por los fundamentos antes expuestos, se **expide** el auto de *certiorari* y se **revoca** la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones